CASE 54—ACTION BY GROCERY CO. AGAINST WASSON AND OTHERS ON A
BOND.—MAY ?1.

# Charles Brown Grocery Co. v. Wasson, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AGAINST WASSON AND DISMISSING PETITION
AS TO OTHER DEFENDANTS AND PLAINTIFF APPEALS.   AFFIRMED.

PRINCIPAL AND SURETY—SALESMAN—CONSTRUCTION OF BOND—AD-
VANCES TO PRINCIPAL—LIABILITY OF SURETIES.

Held:   A surety is not bound beyond the terms of his contract strictly
construed, and therefore where a salesman, who was to receive
as compensation for his services a certain per cent. of the prof-
its on sales made by him, executed to his employer a bond, with
sureties, whereby the obligors undertook that the principal should
"well and faithfully discharge his duties as salesman and col-
lector," and should "also account for all moneys and properties
and other things which may come into his possession or under
his control in such capacity," the sureties are not bound for money
advanced to the principal from month to month on the expectation
that his compensation under the contract would equal the amount
he received, as the money was not received by him in the capac-
ity of salesman or collector.

CHAS. H. FISH, ATTORNEY FOR APPELLANT.

H. D. GREGORY, ATTORNEY FOR APPELLEES.
     (No briefs in the record.)

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellant, the Charles Brown Grocery Company, em-
ployed C. E. Wasson as salesman.  By the contract be-
tween them he was to receive for his services compensa-
tion at the rate of 40 per cent. of the gross profits on
the sales made by him.  For a part of the time the com-
pany guaranteed to him that this should not be less than
$85 per month and expenses, but later the guaranty was
withdrawn.  The company furnished him money from

time to time, as he called for it, to cover his expenses
and salary, and at the end of his term of service he had
fallen in debt to it in the sum of $572.77. He executed
to it a bond, with appellees as sureties, for the faithful
performance of his duties, and this suit was brought by
the company on the bond against him and his sureties to
recover the balance owing by him. On final hearing the
court gave judgment against him for the amount claimed,
but dismissed the action as to his sureties, and from
this judgment the plaintiff appeals. The only question in
the case that need be determined is whether the bond
which the sureties signed covers the liability sued for.
By it the obligors acknowledged themselves bound to the
company-in the sum of $2,000, and then concludes with
these words: "The condition of the above obligation is .
such that whereas, the said Charles Brown Grocery Com-
pany aforesaid have employed the said Charles E. Wasson
to sell goods and collect for same. Now, if the said
Charles E. Wasson shall well and faithfully discharge
his duties as salesman and collector, and shall also ac-
count for all moneys and properties and other things
which may come into his possession or under his control
in such capacity, then the above obligation is to be void;
otherwise to remain in full force and virtue." It is not
averred or shown that Wasson failed to discharge his
duties as salesman or collector or that he did not account
for moneys, property or other things which came into his
possession or under his control in that capacity unless
the money advanced to him by the company as above ex-
plained comes within the words quoted. He accounted
for all the goods that were.delivered to him to sell, and
also for all the money that he collected. The money that
was not accounted for was advanced to him by the com-

pany, not alone to cover his traveling expenses, but was paid to him from month to month on the expectation that his compensation under the contract would equal the amount he received. This expectation was disappointed by the fact that a mistake was made in his account, and there were some bad debts or losses which cut down the profits. He did not receive the money as salesman or collector to hold it for the company, but it was evidently paid to him with the intent that he was to use as his own what was over and above his expenses. He furnished the company monthly a statement of his expenses, and it therefore knew every month just how much he was appropriating. He owed the company the amount he so appropriated over and above the salary that was coming to him under his contract, but the question is, are his sureties liable for the amount thus overpaid him by the company on account of his salary? The general rule is that a surety is not bound beyond the terms of his contract strictly construed, and that it can not be enlarged by implication to cover anything not in the contemplation of the parties at the time of its execution. The condition of the bond recites that the company has employed Wasson to sell goods and collect for them, and obligates the signors that he shall faithfully perform his duties as salesman and collector, and account for everything coming into his possession or under his control in that capacity. It contains no allusion to advances made by the company to him, and to make it include these would be to extend its terms beyond the fair meaning of the words used. The covenant is, in effect, that he will truly account for and pay over all money received by him as salesman and collector. It is no more than a guaranty of the honesty of the agent. But when

the company advanced to him money to be used by him as his own, and to be repaid so far as it exceeded his commissions when a settlement was made, a different liability was created. The sureties, by the terms of the bond, risked the integrity of the agent, but did not risk the uncertainties of the business and his ability to replace money he had spent as his own with the consent of the company; for their undertaking is that he will account for the money of the company coming to his hands as agent. The money sued for was not advanced to him to hold as the agent of the company, but it was intended he should use it as his own, and this he did with the consent of the company.

In Insurance Co. v. Lowenberg, 120 N. Y., 44 (23 N. E., 978), the suit was brought upon the agent's bond, the condition of which provided that the agent "shall keep true and accurate accounts of all business of said company intrusted to him, shall promptly pay to said company, or to such person or bank as the treasurer of said company may designate from time to time, all moneys of said company that may be received by him or come into his possession or control, and shall deliver all the property of said company that he may at any time receive or obtain control of, etc. It was agreed between the agent and the company that he should be paid for his services by a commission, and that he should be allowed to draw at the rate of $2,000 a year, payable monthly. At the end of the year any amount due him for commission should be paid to him, and any amount overdrawn by him should be returned to the company. His commissions did not amount to $2,000, and suit was brought on the bond to recover for the overdraft. The surety was held not liable. The court said:

"The defendant, as surety, may have been willing to undertake that Wolffsohn should faithfully discharge the trust reposed in him as such agent as to the money and property coming to his hands for which he would be criminally liable for misappropriation, when he would not be willing to become surety to pay his ordinary debts. Whilst the money sought to be recovered in this action was received by Wolffsohn in a fiduciary capacity, it was retained by him under the provisions of the agreement, which permitted him so to do, to apply upon his commission or salary; and the circumstances under which it was retained are such as to lead to the inference that it was within the contemplation of the parties that he should have the right to use and expend the same for the support of himself and family. The provisions of the contract requiring him to repay at the end of the year in case his commission did not amount to the sum so retained would make him liable for such amount as an ordinary debtor. He would not be liable for embezzlement or misappropriation in case of his inability to repay." The only difference between that case and this is that here the agreement as to the advances and the repayment by the agent of the excess was not expressly made; but it may clearly be implied from the circumstances and conduct of the parties, and the same principles must govern as in the case of an express contract. The rule was also applied in Insurance Co. v. Johnson, 120 Ill., 622, 12 N. E., 205, under a bond reading substantially as the one before us, and facts much the same. The court said: "The money advanced to their agent according to the averment in the declaration is outside of the terms of the written agreement. The legal effect of the bond of the sureties is that their principal should perform and observe all the covenants and undertakings contained in the written con-

tract, but nothing beyond what may fairly be said to be within its terms." In like manner, where an agent for selling sewing machines made a settlement of his agency, turning over all machines and other property in his hands, but afterwards bought machines on his own account, giving his note for the price, his sureties were held not liable for the price of these machines. Phillips v. Machine Co., 88 Ill., 305. So, where the defendant was surety in a contractor's bond for the performance of his contract, which provided that he was to be paid by installments and one-fourth retained until the work was done, the plaintiff made advances to the contractor not called for by the contract, and in excess of the work done by him. He having failed to complete the work, it was held that the surety was not liable for the advances beyond the amount of the work done, according to the terms of the contract. Warre v. Calvert, 7 Adol. & E., 143; Ryan v. Morton, 65 Tex., 258. In the case before us about $17 of the amount is for groceries sold to Wasson by the company for use in his family. His sureties are not responsible for this, or for the money advanced to him by the company on account of his commissions which he had not earned.

Judgment affirmed.

Whole court sitting.