City of Chicago, Appellee, v. Joseph Siebert, Jr., and United States Fidelity & Guaranty Company, Defendants. United States Fidelity & Guaranty Company, Appellant.

## Gen. No. 31,551.

1. SURETYSHIP—*retroactive liability.* Except for special language in a public servant's bond to the contrary, the surety thereon is not bound for defaults or breaches by his principal which occurred before the bond's date.

2. SURETYSHIP—*construction of bond as to liability.* The obligations of a surety on a public servant's bond must be strictly construed in the surety's favor in deciding whether the bond is only prospective or also retrospective so that it will cover defaults of the principal before the bond is entered into.

3. INDEMNITY—*when bond constitutes contract of.* A bond of a public servant securing the city against loss by the principal's default or breach of duty is technically a contract of indemnity on which a cause of action does not arise until the loss sustained has been definitely ascertained.

4. INDEMNITY—*when contract retroactive.* The indemnity bond of a public servant which recites that his appointment was several days before the date of giving the bond is retroactive and fixes the date when the surety's liability begins as the day of appointment.

5. INDEMNITY—*when liability accrues.* Where the bond of a bridge tender to the city was entered into after an act of negligence on his part, for which the person injured thereby thereafter recovered judgment against the city, the sureties on the bond were liable in an action by the city as even if the bond were not retroactive in operation, the liability covered by the bond did not accrue until the entry of judgment against the city, after the execution of the bond.

Appeal by defendant from the Municipal Court of Chicago; the Hon. EDGAR A. JONAS, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1926. Affirmed. Opinion filed March 14, 1927.

EUGENE P. KEALY, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, and JOHN J. KELLY, City Attorney, for appellee; CHARLES W. STIEFEL, JR., Assistant City Attorney, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The appeal of the defendant surety company is from a judgment of $1,500 entered upon the finding of the court. The defendants made a motion to strike the statement of claim, which was denied, and defendants electing to stand by their motion, their default was entered for want of an affidavit of merits. The court heard evidence in support of the statement, a finding was made and judgment entered as above set forth.

The facts are not in dispute. The statement of claim alleged and the proof tended to show that on July 19, 1923, defendant Joseph Siebert, Jr., as principal, and the surety corporation as surety, entered into a written obligation or bond to the City of Chicago in the sum of $1,500. The bond recited:

"The Condition Of The Above Obligation Is Such: That whereas, the above bounden Joseph C. Siebert, Jr., was on the first day of July, 1923, appointed to the office or position of Bridgetender in the Department of Public Works of the City of Chicago.

"Now, Therefore, if the said Joseph C. Siebert, Jr., shall well and faithfully perform and discharge the duties of said office or position as prescribed and required by law, by the orders and ordinances of said city, or by the orders of the Commissioner of Public Works, and shall pay to said City all loss, damages and expense of every kind accruing to said City on account of any injury sustained or otherwise resulting from or caused by any misconduct, breach of duty, failure or neglect on the part of said Joseph C. Siebert, Jr., and shall at any time on demand forthwith account for and pay over all moneys received by him as such Bridgetender in accordance with the law and with orders and ordinances heretofore passed or hereafter to be passed by the City Council of said City in conformity with law, and shall likewise on demand deliver to said Commissioner of Public Works all books, papers and all other property in his possession, care, custody or control as such Bridgetender, then this obligation to be void; otherwise to remain in full force and effect."

It was also alleged and proved that on July 14, 1923, the defendant Joseph C. Siebert, Jr., while acting as bridgtender at the Archer Avenue Bridge, within the City of Chicago, negligently and carelessly released the locks and brakes of said bridge while one Robert Stift was still upon said bridge driving a team of

horses and a wagon, so that the said bridge was lifted and the said Robert Stift was thrown to the ground, sustaining severe personal injuries. Said Robert Stift on July 22, 1924, filed suit against the City of Chicago in the circuit court of Cook county, and on December 24, 1925, a judgment was entered against the City of Chicago in the sum of $4,000, which judgment the City of Chicago has paid.

The evidence tended to show that Siebert, Jr., entered the service of the City of Chicago on June 11, 1923, as a civil service employee, and that at the time of the trial he was still working for the city as such civil service employee.

The surety company says that the sole point in the case is whether the bond given is retroactive. It takes the position that it is not retroactive, but prospective, and that no liability can possibly attach to the surety on account of breaches or defaults of the principal prior to July 19, the day upon which the bond was executed.

It must be conceded that in the absence of language compelling a contrary construction, the general rule is as the surety company contends. It has been so held in *Bartlett v. Wheeler*, 195 Ill. 445, where the court said: "A surety on a bond given to secure the faithful performance of a contract is not liable for defaults of his principal previous to the transaction wherein the bond and contract were executed, unless the contract is retrospective in terms."

It is also the law, as the surety company contends, that the obligations of a surety are to be strictly construed. *Baker v. Peterson*, 300 Ill. 526.*

To these contentions the plaintiff makes a twofold reply. It says, in the first place, that, conceding the obligation of the bond to be prospective only, the right of action thereon did not accrue or arise at the time of Siebert's neglect, but only when the judgment

* As to the rule in the case of bonds of surety companies, see *post*, p. 204.

was entered against the city in the case brought by Stift, which was long after the delivery of the bond. In the second place, the plaintiff says that if it be assumed that the negligent act of Siebert, rather than the loss sustained by the city, constitutes the breach of the bond, then the bond properly construed is by its terms retroactive.

There seems to be a clear distinction made in the cases (we think, reasonably) between an agreement to do a particular thing and an agreement to pay a loss which results by reason of a third party doing or refraining from doing a particular thing. In the first class of cases the right of action arises immediately upon the happening or nonhappening of the particular thing. In the latter case, the contract is technically one of indemnity, and the breach or cause of action does not arise until it has been definitely ascertained that damage or loss has been sustained. *Power v. Munger,* 52 Fed. 705; *Trinity Church v. Higgins,* 48 N. Y. 532; *Furnas v. Durgin,* 119 Mass. 500, are a few of the many cases which might be cited to this point.

This distinction becomes important in determining the controlling question here, which, after all, is, What was the intention of the parties to the contract of suretyship? That intention must be determined from the written contract, strictly construed as to the defendant's obligation.

Cases have been cited by both parties, plaintiff relying on *Hatch v. Inhabitants of Attleborough,* 97 Mass. 533; *Baker City v. Murphy,* 30 Ore. 405, 42 Pac. 133, 35 L. R. A. 88; *McMullen v. Winfield Building & Loan Ass'n,* 64 Kan. 298, 56 L. R. A. 924; while defendant relies on *Bartlett v. Wheeler, supra; Coons v. People,* 76 Ill. 383, 385; *Schoeneman v. Martyn,* 68 Ill. App. 412; *United States v. Boyd,* 5 How. (U. S.) 29, and very many other cases. It would not be a difficult matter to distinguish any or all of these cases. They all resemble, but not one is similar in facts to, the case we must now decide.

The defendant argues it is unreasonable to suppose that, if the surety company had notice of a default by the principal prior to the time that the bond was executed, it would have made a bond retroactive in its terms and that it would be foolish to assume that any surety would knowingly assume a default existing at the time of the execution of the bond, wherein the surety would be obligated to expend the penal sum of the bond. The answer to this, in the first place, is that, so construing the bond, the principal was not in default at the time of the execution of it. He had been negligent at that time, but whether this negligence would or would not result in loss to the city had not been determined.

In the second place, the language of the bond (which at any rate must be controlling) recites that Siebert was appointed to his position on July 1, 1923. It is impossible to conceive of any purpose the parties could have had in mind in using this language or reciting this date, other than to fix the time on which the obligation of the surety should begin.

The defendant also argues that the obligations of the surety were prospective only from the fact that the condition of the bond is, if Siebert "shall" perform the duties of the office or position, and, again, "shall" pay to the city all loss, damage and expense of every kind. The answer to this contention is that the liability was future and did not in fact arise until December 24, 1925, which was over two years after the execution of the bond.

Our conclusion is, first, that by its express language the bond executed is retroactive; but, second, assuming that it is not, defendant is nevertheless liable for the loss, damage and expense sustained by the city in the suit brought against it by Stift after the bond was executed. We think this is the only fair interpretation of the intention of the parties gathered from the whole instrument. Any other construction would require us

to discard as meaningless the recital of the bond as to the date upon which Siebert was appointed.

The judgment is affirmed.

*Affirmed.*

McSurely, P. J., and Johnston, J., concur.